# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### (Southern Division)

FILED
03 APR 18 PM 3: 41
U.S. _____
WEST. DIST. _____ CLERK
WEST. DIST. OF MICH.

|  |  |
|---|---|
| IN RE:  QUALITY STORES, INC., ET AL. | Chapter 11<br>Case No. GG-01-10662<br>(Jointly Administered) |
| QSI HOLDINGS, INC. and QUALITY STORES, INC., | Hon. James D. Gregg |
| Plaintiffs, |  |
| v. |  |
| DAVID C. BLISS, TED G. BRITTON, GARRY H. BROWN, CHRISTOPHER CABOT, RICHARD CALAME, JOHN W. CHILDS, RANDALL L. DEINES, RICHARD C. DRESDALE, ALAN L. FANSLER, JACK P. FEICHTNER, HABIB Y. GORGI, KENNETH C. HAINES, JOHN L. HILT, JERRY D. HORN, JAMES F. HURLEY, BRETT A. JONES, ERIC E. JORDAN, JOHN K. KEENAN, JR., DONALD M. KETTLER, PETER LAMM, G. DEAN LONGNECKER, DAVID A. MADDOX, GREGORY A. MANN, WAYNE E. McCOLLUM, JAMES T. McKITRICK, ROGER C. REBER, JAMES A. REECE, THOMAS J. REINEBACH, CRAIG L. SCARBOROUGH, STEVEN G. SEGAL, DONALD O. SHILSTRA, RICHARD J. STACY, JEFFREY STANTON, DENNY L. STARR, RICHARD W. STEKETEE, JR., ADAM L. SUTTIN, JEFFREY SWARTZ, DEAN D. TRILLING, DAVID TUIT, WILLIAM A. WAACK, BRIAN G. WARD, WILLIAM E. WATTS, AND DOE DEFENDANTS 1-50, | Adversary Proceeding<br>No. 03-88076<br><br>Oral Argument Requested |
| Defendants. |  |

9126950.5



## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS PETER LAMM AND RICHARD C. DRESDALE TO DISMISS COMPLAINT

Peter Lamm and Richard C. Dresdale[1] are both former outside directors of the Debtor, Quality Stores, Inc. ("Quality Stores" or the "Debtor"). Along with seemingly every other former director and officer of the Debtor, Messrs. Lamm and Dresdale have been sued in this action by the Debtor's Chief Litigation Officer, who indiscriminately asserts six counts against forty-two individuals for alleged breaches of fiduciary duty, "negligent inaction," and waste. All of these "wrongs" purportedly are based on unspecified conduct of these Defendants at some time between 1997 and 2001.

The Complaint should be dismissed in its entirety. As an initial matter, one is struck by the utterly vague and conclusory nature of the Complaint, even under liberal notice-pleading standards. After reading the Plaintiffs' pleading, one is left to guess what in the world Lamm and Dresdale are alleged to have done that is actionable, as well as when such alleged conduct was supposed to have occurred. Indeed, the *only* place in which either Lamm's or Dresdale's name appears in the Complaint is the paragraph in which each is named as a party. Compl. ¶¶ 15, 27.

As discussed in detail below, the Complaint should be dismissed for at least two independently sufficient reasons. First, the Plaintiffs' pleading fails to overcome the business judgment rule as to any alleged acts or omissions by outside directors Lamm and Dresdale.

---

[1] The Complaint raises serious issues under 28 U.S.C. §§ 1334 and 157, and Article III of the United States Constitution, concerning the jurisdiction of this Court to hear the claims asserted therein. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). Lamm and Dresdale have not filed proofs of claim and have not – and do not – consent to any exercise of jurisdiction by this Court. Lamm and Dresdale also expressly preserve their right to a trial by jury of all issues so triable. Accordingly, both Lamm and Dresdale object to this Court's jurisdiction and hereby preserve their right to object to jurisdiction.

Second, the breach of fiduciary duty, "negligent inaction," and waste counts in the Complaint

run afoul of Section 102(b)(7) of the Delaware Corporation Laws and thus fail, as a matter of

law, to state a claim against Lamm and Dresdale for which relief may be granted.  By filing a

Complaint bereft of allegations of actionable misconduct and rife with legal deficiencies,

Plaintiffs have needlessly burdened the Court and the Defendants.  Lacking any viable legal

basis on which to demand that "a corporate officer or director be put to the expense of defending

such . . . claim[s]," the Complaint should be dismissed with prejudice.  *See Gagliardi* v.

*Trifoods Int'l, Inc.*, 683 A.2d 1049, 1052 (Del. Ch. 1996).[2]

## STATEMENT OF FACTS

Plaintiffs are Quality Stores, Inc. ("Quality Stores") and QSI Holdings Inc. ("QSI")

(collectively the "Debtors"), both of which are Delaware corporations.  Compl. ¶¶ 6-7.[3]  On

November 1, 2001, Quality Stores answered an involuntary petition filed against it in this Court

by creditors under Chapter 11 of the United States Code (the "Bankruptcy Code"), and consented

to the entry of an order of relief.  *Id.* ¶ 3.  The same day, QSI filed a voluntary petition for relief

under Chapter 11 as an affiliated debtor of Quality Stores.  *Id.*  Pursuant to the First Amended

Joint Plan of Reorganization (the "Reorganization Plan"), the Debtors' assets were liquidated for

distribution to creditors of the bankruptcy estate.  The Chief Litigation Officer, as appointed

---

[2]  The officers and directors of Quality Stores, other than Lamm and Dresdale, have also filed a separate motion to dismiss.  To the extent the arguments of that motion to dismiss are applicable to them, Lamm and Dresdale expressly incorporate by reference that motion to dismiss herein.

[3]  For purposes of the Motion to Dismiss only, Lamm and Dresdale accept as true the "facts" set forth in the Complaint.  *See, e.g., Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002); *In re Ellingsen MacClean Oil Co.*, 98 B.R. 284, 288 n.4 (Bankr. W.D. Mich. 1989) (applying Fed. R. Civ. P. 12(b) to bankruptcy proceedings through Fed. R. Bankr. P. 7012(b)).  Neither the Court nor Lamm and Dresdale, however, need accept the "legal conclusions or unwarranted factual inferences" put forth by the Plaintiffs.  *Blakely*, 276 F.3d at 863.

under the Reorganization Plan, has brought this adversary proceeding on the Debtors' behalf. *Id.*
¶¶ 4-5.

Prior to its bankruptcy, Quality Stores managed over three hundred stores in thirty-two
states, specializing in the agricultural, hardware, and related needs of rural consumers,
particularly part-time and full-time farmers and ranchers, hobby gardeners, skilled trades
persons, and do-it-yourself customers. The forty-two Defendants are identified as former
officers and/or directors of Quality Stores and/or QSI. *Id.* ¶¶ 4-49. The Plaintiffs, however, do
not specify when any of the Defendants served in their respective positions at the Debtors. *See*
*id.* Indeed, the Complaint does not even distinguish between Quality Stores and QSI in
identifying the directors and officers of the respective entities. For their part, Lamm and
Dresdale are listed as former directors, but the Complaint provides no time period for their tenure
nor any details whatsoever about their particular service or conduct as directors. *See id.* ¶¶ 5,
14.[4]

---

[4] The Complaint alleges, without support or basis, that Richard Dresdale also served as an
officer of the Debtors. Compl. ¶ 15. This allegation is simply wrong. At no time did Dresdale
serve in any such capacity. Prior public filings by Quality Stores with the U.S. Securities and
Exchange Commission ("SEC") confirm that Mr. Dresdale served solely as an outside director,
and was never elected to be an officer of Quality Stores. *See, e.g.*, Annual Report of Quality
Stores to the Securities and Exchange Commission (Form 10-K) for the Fiscal Year Ended
February 3, 2001, *available at* www.sec.gov, attached as Exhibit 5 to the Affidavit of James B.
Frakie, filed herewith. Relevant pages of every annual Form 10-K filed by Quality Stores with
the SEC over the time period covered by the Complaint (1997-2001) are also attached, as
Exhibits 6 through 8 to the Affidavit of James B. Frakie. This Court may take judicial notice of
such SEC filings pursuant to Fed. R. Evid. 201(b) and (d). *E.g.*, *Kramer* v. *Time Warner Inc.*,
937 F.2d 767, 774 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of
relevant public disclosure documents required to be filed with the SEC as facts 'capable of
accurate and ready determination by resort to sources whose accuracy cannot reasonably be
questioned.' Fed.R.Evid. 201(b)(2)."). Because Plaintiffs' counsel lacks a good faith basis to
allege that Dresdale served as an officer, counsel must amend and correct the Complaint in this
regard, or otherwise run afoul of Fed. R. Bankr. P. 9011(b)(3).

Quality Stores was originally established in 1935. On or about March 27, 1999, Central Tractor Farm & Country, Inc. ("Central Tractor") and CT Holdings, an entity that was acquired by J.W. Childs Equity Partners, L.P. ("J.W. Childs") in November 1996, entered into an agreement with Quality Stores under which Central Tractor bought Quality Stores. Compl. ¶ 53. On or about May 7, 1999, Quality Stores merged into Central Tractor, with Central Tractor emerging as the surviving corporation and changing its name to "Quality Stores, Inc." *Id.* Quality Stores is now a wholly-owned subsidiary of QSI, an affiliate of J.W. Childs.

In their Complaint, Plaintiffs assert in conclusory fashion that the forty-two individual Defendants, many of whom presumably had different positions and tenures with Quality Stores, all engaged in "a number of ill-advised and grossly negligent decisions," which supposedly led to the "financial demise" of the Debtors. *Id.* ¶¶ 54, 96. The Plaintiffs offer few facts about what supposedly happened during the nearly five-year period that the Complaint puts at issue; instead, Plaintiffs mainly rely upon sweeping statements and unsupported, unwarranted conclusions. The few discernable "facts" alleged in the Complaint are limited to the following allegations against all forty-two Defendants, without any attempt to differentiate among the mass of former officers and directors:

- The Defendants supposedly integrated the computerized inventory management systems of Quality Stores and Central Tractor using a non-Y2K-compliant system that was not equipped to handle the increased sales volume resulting from the merger, and using an "unsubstantiated" assumption that sales patterns at Central Tractor were identical to the patterns of similar goods sold by Quality Stores. Compl. ¶¶ 54-66.

- The Defendants allegedly adopted a "trade-dating-for-discounts" policy, whereby the company agreed to repay credit on an accelerated basis in exchange for large volume discounts, while problems with the inventory management system and the purchase of excess inventory supposedly placed the company in a position in which it was unable to pay down debt on an accelerated basis. *Id.* ¶¶ 74-75.

- The Defendants instituted a bidding process among vendors, with the aim to lower merchandise costs, but with the alleged effect of alienating long-time vendors and introducing unknown and untested merchandise into the Company's retail chain. *Id.* ¶ 79.

- The Defendants opened twenty-five new stores in 2000, but closed twenty-eight stores the same year, allegedly resulting in large inventory liquidation losses and other exit costs. *Id.* ¶ 80.

- The Defendants supposedly spent too much on advertising and promotional pricing, without relying on any "data or feasibility studies" regarding the effectiveness of such advertising, thereby reducing profits. *Id.* ¶ 82-84.

- The Defendants implemented an on-line store – based on customer surveys that Plaintiffs claim were not tested by "any statistically proven methodology" – which ultimately proved unsuccessful. *Id.* ¶¶ 85-89.

- The Defendants authorized payment of management fees to J.W. Childs and Fenway Partners for which the Company allegedly did not receive any benefit. *Id.* ¶¶ 90-92.

It is based on these "facts" – and these alone – that the Plaintiffs have filed the present claims against Messrs. Lamm and Dresdale and now seek to hold each of those former outside directors personally liable.

The Complaint makes no claim that Messrs. Lamm or Dresdale (or any other Defendant, for that matter) acted out of self-interest or with any suspect motive, or that they somehow profited personally from the alleged business decisions with which the Plaintiffs now find fault.

## ARGUMENT

The Complaint must be dismissed because, taking all well-pled factual averments as true and drawing all reasonable inferences in their favor, the Plaintiffs cannot prevail. It is of course well-settled that, on a motion to dismiss, "[t]he Court must construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set

of facts in support of the claims that would entitle him to relief.  However, the Court need not

accept as true legal conclusions or unwarranted factual inferences." *Blakely* v. *United States*,

276 F.3d 853, 863 (6th Cir. 2002) (citation omitted).  Under this standard, the Complaint should

be dismissed as to Lamm and Dresdale.  For starters, two of the six counts – Counts I and III –

do not apply to Lamm and Dresdale at all.[5]  As for the remaining counts, Plaintiffs have failed to

allege anything other than "honest mistakes of judgment," which are protected under Delaware

law by the business judgment rule.  *See* Section I, *infra*.  In addition to the Complaint's failure to

overcome the business judgment rule, Lamm and Dresdale are, as a matter of Delaware statutory

law, exculpated from personal liability for the conduct alleged by the Plaintiffs.  *See* Section II,

*infra*.  Accordingly, the instant Motion should be granted and the Complaint should be dismissed

with prejudice.

**I.      THE COMPLAINT FAILS TO OVERCOME THE PRESUMPTION UNDER
         DELAWARE LAW THAT LAMM AND DRESDALE ACTED IN GOOD FAITH
         AND IN THE BEST INTERESTS OF QUALITY STORES AND QSI**

Even assuming *arguendo* that the skeletal allegations in the Complaint encompass acts or

omissions by Lamm and Dresdale — although no such acts or omissions are specifically

attributed to them in the Complaint — the Plaintiffs must still overcome the business judgment

rule in order to survive a motion to dismiss.  This, the Plaintiffs have failed to do.

The business judgment rule is "a presumption that in making a business decision the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that

---

[5] Count I seeks disallowance of proofs of claim.  Compl. ¶¶ 97-101.  Lamm and Dresdale have
not submitted proofs of claim.  Count III alleges breach of fiduciary duty by the former officers
of the Debtors.  *Id.*  ¶¶ 106-09.  Neither Lamm nor Dresdale was an officer of the Debtors.  *See*
footnote 4, *supra*.

-7-

the action taken was in the best interests of the company." *Aronson* v. *Lewis*, 473 A.2d 805, 812

(Del. 1984); *see also Citron* v. *Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del.

1986).[6] The rule is "an extension of the fundamental principle 'that the business and affairs of a

corporation are managed by and under the direction of its board.'" *Id.* at 64 (quoting *Pogostin* v.

*Rice*, 480 A.2d 619, 624 (Del. 1984)); *In re The Walt Disney Co. Derivative Litig.*, 731 A.2d

342, 362 (Del. Ch. 1998) ("It is the essence of the business judgment rule that a court will not

apply 20/20 hindsight to second guess a board's decision, except 'in rare cases [where] a

transaction may be so egregious on its face that board approval cannot meet the test of business

judgment.'" (quoting *Aronson*, 473 A.2d at 815)), *rev'd on other grounds sub nom. Brehm* v.

*Eisner*, 746 A.2d 244 (Del. 2000). The business judgment rule seeks to ensure that directors and

officers will not be held personally liable for "honest mistakes of judgment." *See Cheff* v.

*Mathes*, 199 A.2d 548, 555 (Del. Ch. 1964); *Johnson* v. *Trueblood*, 629 F.2d 287, 294 (3d Cir.

1980).

Even at the pleading stage, a complaint that fails to allege facts sufficient to overcome the

business judgment rule must be dismissed. *Spiegel* v. *Buntrock*, 571 A.2d 767, 777-78 (Del.

1990); *Gagliardi*, 683 A.2d at 1052. To state a claim under Delaware law against a corporate

fiduciary, the business judgment rule's presumption of non-liability must be overcome, and the

---

[6] Delaware law applies to this dispute. As the United States District Court for the Eastern District of Michigan has explained, "[i]n matters of internal corporate governance, the law of the state of incorporation will ordinarily govern; while in matters external to the corporation, more general choice of law rules apply." *Chrysler Corp.* v. *Ford Motor Corp.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997) (citing *First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983), and Restatement (Second) of Conflict of Laws §§ 301 and 302); *see also Rapistan Corp.* v. *Michaels*, 511 N.W.2d 918, 922 (Mich Ct. App. 1994) (per curiam) (applying Delaware law to claim that officers of Delaware corporation usurped corporate opportunity). Because Quality Stores and QSI were incorporated in Delaware at all relevant times, *see* Compl. ¶¶ 6-7, the law of the state of Delaware controls here.

burden of pleading facts sufficient to overcome the business judgment rule falls on the party challenging director conduct. *Cede & Co.* v. *Technicolor, Inc.*, 634 A.2d. 345, 361 (Del. 1993). In particular, a party challenging director conduct must allege facts sufficient to raise the specter of self-dealing, bad faith or gross negligence by that director. *Citron*, 569 A.2d at 64; *Krim* v. *Pronet, Inc.*, 744 A.2d 523, 527 (Del. Ch. 1999). "If the proponent fails to meet her burden of establishing facts rebutting the presumption, the business judgment rule, as a substantive rule of law, will attach to protect the directors and the decisions that they make." *Id.* (citing *Smith* v. *VanGorkom*, 488 A.2d 858, 872 (Del. 1985), and *Revlon* v. *McAndrews & Forbes Holding Co.*, 506 A.2d 173, 180 n.10 (Del. 1986)); *see also Cede & Co.*, 634 A.2d at 361. Moreover, if a complaint fails to allege conduct that would, if proven, overcome the presumption of the business judgment rule, the complaint should be dismissed. *In re BHC Communications, Inc. S'holder Litig.*, 789 A.2d 1, 4 (Del. Ch. 2001) ("Of course, it is a bedrock principle of Delaware corporate law that, where a claim for breach of fiduciary duty fails to contain allegations of fact that, if true, would rebut the business judgment rule, that claim should ordinarily by dismissed under Rule 12(b)(6).").

The allegations of the Complaint here fail to come within even "shouting distance" of overcoming the business judgment rule. *See Gagliardi*, 683 A.2d at 1053. The Complaint alleges that the Defendants made a number of "ill-considered *business* decisions," concerning (i) the integration of multiple computerized inventory management systems; (ii) the adoption of a "trade-dating-for-discounts" policy; (iii) the institution of a bidding process among vendors; (iv) the decision(s) to open twenty-five new stores in 2000 and close twenty-eight stores the same year; (v) expenditures on advertising and promotional pricing; (vi) the implementation of an on-line store; and (vii) the payment of certain management fees. Compl. ¶ 78 (emphasis added); ¶¶

-9-

54-96.  Stripped of their invective, the Plaintiffs' allegations amount to nothing more than an after-the-fact critique of certain operational decisions made in real time by the company's managers as they tried to integrate Central Tractor into Quality Stores and make a go of the merged businesses.  Whether or not those decisions ultimately proved successful is simply beside the point as far as the business judgment rule is concerned.  *See, e.g., Brehm* v. *Eisner*, 746 A.2d 244, 260 (Del. 2000) ("It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision.").

Properly viewed, therefore, the Complaint fails to state a cognizable claim for misconduct by any of the directors or officers of Quality Stores — let alone by outside directors Lamm and Dresdale.  At best, like a similar case summarily dispatched by the Delaware Chancery Court, the Complaint in this case "alleges only . . . ordinary business decision[s] . . . with . . . pejorative characterization[s] added."  *Gagliardi*, 683 A.2d at 1049.  Indeed, at the very most, the business decisions in this case, like those at issue in *Gagliardi*, "constitute either mistakes, poor judgment, or reflect hard choices facing a cash-pressed company."  *Id.*  Here, as in *Gagliardi*, there is not a single "allegation of conflicting interest or suspect motivation," as required in order to overcome the business judgment rule and avoid dismissal.  *Id.*; *see also Ash* v. *McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *1, *10 (Del. Ch. Sept. 15, 2000) ("[T]his Court has stated on several occasions that mere allegations that directors made a poor decision – absent some showing of self-dealing or suspect motivation – does not state a cause of action.").[7]

On the contrary, the allegations of the Complaint simply concern matters – "business decisions," in the Plaintiffs' own words, Compl. ¶ 78 – that fall within the ordinary business

_____

[7] Copies of all unreported decisions cited herein are included in the Appendix of Unreported Decisions filed with this Motion to Dismiss.

judgment of corporate fiduciaries. *See Gagliardi*, 683 A.2d at 1053. The fact "that plaintiff

regards the decision as unwise, foolish, or even stupid in the circumstances is not legally

significant; indeed that others may look back on it and agree that it was stupid is legally

unimportant." *Id.* The business judgment rule unquestionably protects such decisions.

Because the Complaint "fails to contain allegations of fact that, if true, would rebut the

business judgment rule" as applied to Lamm and Dresdale, the Complaint should be dismissed in

its entirety, and with prejudice. *In re BHC Communications, Inc. S'holder Litig.*, 789 A.2d at 4.

**II.    IN ADDITION TO ITS FAILURE TO OVERCOME THE BUSINESS
         JUDGMENT RULE, THE COMPLAINT FAILS TO STATE A CLAIM  FOR
         PERSONAL LIABILITY AGAINST DEFENDANTS LAMM AND DRESDALE,
         AND MUST THEREFORE BE DISMISSED**

Plaintiffs allege that the Defendants, including Lamm and Dresdale, breached their

fiduciary duties to Quality Stores and are guilty of "waste" or "negligent inaction." These

claims cannot form the basis of personal liability for Messrs. Lamm and Dresdale as a matter of

Delaware statutory law. Under Delaware law, a corporation may "exempt[] [its] directors from

personal liability for money damages for claims of breach of the duty of care." *Green* v.

*Phillips*, Civil Action No. 14436, 1996 WL 342093, at *6 (Del. Ch. June 19, 1996). Specifically,

Section 102(b)(7) of the Delaware Corporation Laws provides that a certificate of incorporation

may contain

> [a] provision eliminating or limiting the personal liability of a director to the
> corporation or its stockholders for monetary damages for breach of fiduciary duty
> as a director, provided that such provision shall not eliminate or limit the liability
> of a director: (i) For any breach of the director's duty of loyalty to the corporation
> or its stockholders; (ii) for acts or omissions not in good faith or which involve
> intentional misconduct or knowing violations of law; (iii) under §174 of this title
> [regarding improper dividend payments or stock purchases/redemptions]; or (iv)
> for any transaction from which the director derived an improper personal benefit.

Del. Code Ann. tit. 8, § 102(b)(7).

As authorized by Delaware statute, both Quality Stores' and QSI's Certificates of

Incorporation contain just such an exculpatory provision, thereby absolving its directors of

personal liability for breaches of the duty of care, such as those alleged here.[8]  Quality Stores'

Certificate, for example, provides as follows:

> No director shall be personally liable to the Corporation or any stockholder for
> monetary damages for breach of fiduciary duty as a director, except to the extent
> that exculpation from liability is not permitted under the General Corporation
> Law of the State of Delaware as in effect when such breach occurred.  Neither the
> amendment nor repeal of the Article nor the adoption of any provision of this
> Certificate of Incorporation inconsistent with this Article shall reduce, eliminate
> or adversely affect the effect of this Article in respect of any matter occurring, or
> any cause of action, suit or claim that, but for this Article, would accrue or arise,
> prior to the effectiveness of such amendment, repeal or adoption.

Restated Certificate of Incorporation of Central Tractor Farm & Country, Inc., Article

SEVENTH.[9]  The Certificate of Incorporation of QSI contains a nearly identical provision.

---

[8]  Although the Plaintiffs did not attach the Certificates of Incorporation to their Complaint or
otherwise mention them therein, the Court may properly consider the Certificates without
converting the instant Motion to Dismiss into one for summary judgment.  Under Fed. R. Evid.
201(f), a court may take judicial notice of a corporation's charter at any point during litigation,
including on a motion to dismiss.  *McCall* v. *Scott*, 239 F.3d 808, 814 n.3, 818 (6th Cir. 2000)
(taking judicial notice of certificate of incorporation on a motion to dismiss); *Malpiede* v.
*Townson*, 780 A.2d 1075, 1090 & n.47 (Del. 2001) (stating that a court may take judicial notice
of a certificate of incorporation on a motion to dismiss).  In addition, the Court may consider the
Certificates without converting the Motion to Dismiss into one for summary judgment, because
they are documents that "simply fill in the details and contours of the plaintiff's complaint."
*Yeary* v. *Goodwill Indus.-Knoxville Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

[9]  When Central Tractor and Quality Stores merged on May 7, 1999, Central Tractor became the
surviving corporation, and its Certificate of Incorporation remained in full force and effect after
the merger, making Central Tractor's Certificate of Incorporation the governing instrument for
Quality Stores.  *See* Certificate of Merger of Quality Stores, Inc. With and Into Central Tractor
Farm & Country, Inc. Articles THIRD and FOURTH (filed herewith as Exhibit 2 to the Affidavit
of James B. Frakie (hereinafter the "Frakie Affidavit")).  The fact that Quality Stores was
formerly known as Central Tractor is also acknowledged in this Court's Order Confirming First
Amended Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code

-12-

*Accord* Restated Certificate of Incorporation of CT Holding, Inc., Article NINTH.[10] (Certified

copies of the Certificates of Incorporation for Central Tractor and CT Holdings, Inc.; the

Certificate of Merger between Central Tractor and Quality Stores, Inc.; and the Certificate of

Amendment to the Certificate of Incorporation of CT Holding, Inc., changing the name of the

company from CT Holding to QSI, are filed herewith as Exhibits 1 through 4 to the Frakie

Affidavit; those documents are self-authenticating as certified copies of public records pursuant

to Fed. R. Evid. 902(4).)

Whether styled as a claim for "breach of fiduciary duty," "negligent inaction," or

"waste," the averments in the Complaint – to the extent they even state a claim at all – are

directed exclusively at the Defendants' duty of care obligations. *See, e.g.*, *In re Lukens Inc.*

*S'holders Litig.*, 757 A.2d 720, 731-32 (Del. Ch. 1999) ("If a complaint merely alleges that the

directors were grossly negligent in performing their duties . . . without some factual basis to

suspect their motivations, any subsequent finding of liability will, necessarily, depend on finding

breaches of the duty of care, not loyalty or good faith."); *see also Ash*, 2000 WL 1370341, at *8

(citing *Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000)); *Bell Atlantic Corp.* v. *Bolger*, 2 F.3d 1304,

1316 (3d Cir. 1993) (citing *Unocal Corp.* v. *Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del.

---

(Docket No. 1283) (the "Order"), at 1 n.1, and in the Reorganization Plan, attached as Exhibit I
to the Order, at Article I.B., ¶ 27. This Court may take judicial notice of prior filings in this
bankruptcy proceeding. *In re Davis*, 278 B.R. 429, 430 (Bankr. W.D. Mich. 2002).

[10] CT Holdings, Inc. changed its name to QSI Holdings, Inc. on May 7, 1999. *See* Certificate of
Amendment to Certificate of Incorporation of CT Holding, Inc., Article THIRD (filed herewith
as Exhibit 4 to the Frakie Affidavit ). The fact that QSI Holdings, Inc. was formerly known as
CT Holdings, Inc., is also acknowledged in this Court's Order Confirming First Amended Joint
Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code (Docket No.
1283) (the "Order"), at 1 n.1, and in the Reorganization Plan, attached as Exhibit I to the Order,
at Article I.B., ¶ 27.

1985)).  The Complaint alleges, in particular, that the Company experienced financial difficulties

due to "a number of ill-advised and grossly negligent decisions made by the Company's Board

of Directors."  Compl. ¶ 54.  As covered earlier in this brief (at pp. 9-10), the Plaintiffs'

allegations focus exclusively on the wisdom and utility of various operational decisions made by

the Defendants, challenging only their discharge of the duty of care.  The Complaint asserts no

allegations that Lamm, Dresdale, or any of the other Defendants somehow lined their own

pockets, made decisions tainted by self-interest, or otherwise acted in any manner that implicated

– let alone violated – their duties of loyalty or good faith.  Cutting through all of the pejoratives,

and construing the allegations in a light even more favorable than Rule 12(b)(6) requires, the

Complaint *at most* seeks to recover monetary damages for alleged violations of the duty of care

by the Defendants.  Nothing more is alleged or even attempted.

        The action must accordingly be dismissed as to Messrs. Lamm and Dresdale.  In light of

the exculpatory provision contained in Quality Stores' and QSI's Certificates of Incorporation,

the Plaintiffs simply cannot recover monetary damages from Lamm or Dresdale for alleged

breaches of their duty of care.  *See, e.g., In re Lukens*, 757 A.2d at 734 ("The function of the §

102(b)(7) provision is to render duty of care claims not cognizable and to preclude plaintiffs

from pressing claims of breach of fiduciary duty absent the most basic showing (or reasonable

basis to infer) that the directors' conduct was the product of bad faith, disloyalty or one of the

other exceptions listed in the statute."); *Cooke* v. *Oolie,* Civil Action No. 11134, 1997 WL

367034, at *10 (Del. Ch. June 23, 1997) (holding that a claim of breach of the duty of care

"clearly falls within the exculpatory provision [of section 102(b)(7)]"); *Green* v. *Phillips*, 1996

WL 342093, at *7 (stating that money damages for breaching the duty of care are "barred as a

matter of law" by section 102(b)(7)).  Where Section 102(b)(7) and an enabling charter provision

-14-

protect directors from personal liability, actions asserting duty of care violations must be

dismissed for failure to state a claim.  *Malpiede* v. *Townson*, 780 A.2d 1075, 1093 (Del. 2001).

Indeed, as the Delaware Chancery Court has observed:

> The effect of the exculpatory charter provision is to guarantee that the defendant directors do not suffer discovery or a trial simply because the plaintiffs have stated a non-cognizable claim for breach of the duty of care.  To give the exculpatory charter provision any less substantial effect would be to strip away a large measure of the protection the [Delaware] General Assembly has accorded directors through its enactment of [section 102(b)(7)].

*McMillan* v. *Intercargo Corp.*, 768 A.2d 492, 501 (Del. Ch. 2000).

Counts II, IV and V should, accordingly, be dismissed as to Lamm and Dresdale.

-15-

## CONCLUSION

For the foregoing reasons, Lamm and Dresdale respectfully request that their Motion to

Dismiss the Complaint be granted and that the Court dismiss the Complaint with prejudice, as to

them.

<div style="margin-left: 50%;">

Respectfully submitted,

PETER LAMM
RICHARD DRESDALE

By their attorneys,

*James Frakie /TJC*
_____
James B. Frakie (P25439)
Wheeler Upham, P.C.
Second Floor, Trust Building
40 Pearl Street, N.W.
Grand Rapids, MI  49503
(616) 459-7100

</div>

Dated: April 18, 2003

*Of Counsel*

Randall W. Bodner (BBO # 549160)
Peter L. Welsh (BBO #643261)
Timothy J. Casey (BBO #650913)
Ropes & Gray
One International Place
Boston, MA  02110-2624
(617) 951-7000

<div style="text-align: center;">-16-</div>

## CERTIFICATE OF SERVICE

    I hereby certify that on this 18th day of April, 2003, a true copy of the above document was served by first-class mail, postage pre-paid, on:

| | |
|---|---|
| Robert S. Hertzberg<br>Pepper Hamilton LLP<br>100 Renaissance Center, Suite 3600<br>Detroit, MI 48243<br>Clayton, MO 63105 | Greg Shinall<br>Sperling & Slater, P.C.<br>55 West Monroe Street, Suite 3200<br>Chicago, IL 60603 |
| Attorney for Plaintiffs QSI Holdings,<br>Inc. and Quality Stores, Inc. by their<br>Chief Litigation Officer | Attorney for Co-Defendants |

Timothy J. Casey