**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**(Southern Division)**

| | |
|---|---|
| IN RE: QUALITY STORES, INC., ET AL. | Chapter 11<br>Case No. GG-01-10662<br>(Jointly Administered) |
| QSI HOLDINGS, INC. and QUALITY<br>STORES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID C. BLISS, GARRY H. BROWN,<br>JOHN W. CHILDS, RICHARD C. DRESDALE,<br>ALAN L.FANSLER, JACK P. FEICHTNER,<br>HABIB Y. GORGI, JOHN L. HILT, JERRY D.<br>HORN, JAMES F. HURLEY, PETER LAMM,<br>G. DEAN LONGNECKER, DAVID A. MADDOX,<br>GREGORY A. MANN, WAYNE E.<br>McCOLLUM, JAMES T. McKITRICK,<br>THOMAS J. REINEBACH, CRAIG L.<br>SCARBOROUGH, STEVEN G. SEGAL,<br>DONALD O. SHILSTRA, JEFFREY STANTON,<br>DENNY L. STARR, ADAM L. SUTTIN, JEFFREY<br>SWARTZ, WILLIAM A. WAACK, WILLIAM E. WATTS,<br>AND DOE DEFENDANTS 1-39,<br><br>Defendants. | Hon. James D. Gregg<br><br><br><br>Adversary Proceeding<br>No. 03-88076<br><br><br>Oral Argument Requested |

**MEMORANDUM IN SUPPORT OF MOTION OF**
**DEFENDANTS PETER LAMM AND RICHARD C. DRESDALE**
**TO DISMISS AMENDED COMPLAINT**

By the amended complaint (the "Amended Complaint") filed by the Chief Litigation Officer (the "Plaintiff") appointed in the above-referenced cases of QSI Holdings, Inc. ("QSI") and Quality Stores, Inc. ("Quality Stores" or the "Company", and, together with QSI, the "Debtors"), the Plaintiff makes its second, scattershot attempt to blame the former directors and officers of the Debtors for certain business decisions that followed the 1999 merger among Quality Stores, Central Tractor Farm & Country, Inc. and CT Holdings.  Like its first attempt, the Amended Complaint is rife with vague and conclusory challenges to the valid business judgment of, among others, the former directors of Quality Stores, including Peter Lamm ("Lamm") and Richard C. Dresdale ("Dresdale").  Also like its first attempt, the Amended Complaint consists entirely of duty of care claims that fall squarely within the exculpation provisions of the Debtors' charters.  In light of settled Delaware law recognizing the sanctity of a director's business judgment and very recent Delaware decisions confirming that exculpation provisions bar duty-of-care claims regardless of whether such claims purport to be asserted on behalf of a corporation's shareholders or its creditors, *see Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772 (Del. Ch. 2004); *Continuing Creditors' Committee of Star Telecomms., Inc. v. Edgecomb,* No. Civ. A. 03-278-KAJ, 2004 WL 2980736 (D. Del. Dec. 21, 2004), the Amended Complaint must be dismissed in its entirety.[1]  Such dismissal should be with

---

[1]  The Amended Complaint raises serious issues under 28 U.S.C. §§ 1334 and 157, and Article III of the United States Constitution, concerning the jurisdiction of this Court to hear the claims asserted therein.  *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989).  Lamm and Dresdale have not filed proofs of claim and have not – and do not – consent to any exercise of jurisdiction by this Court.  Lamm and Dresdale also expressly preserve their right to a trial by jury of all issues so triable.  Accordingly, both Lamm and Dresdale object to this Court's jurisdiction and hereby preserve their right to object to jurisdiction.

prejudice, as the Plaintiff has again failed to demonstrate any viable legal basis on which to demand that "a corporate officer or director be put to the expense of defending" the claims asserted in the Amended Complaint.  *See Gagliardi* v. *TriFoods Int'l, Inc.*, 683 A.2d 1049, 1053 (Del. Ch. 1996).[2]

## PROCEDURAL BACKGROUND

On or about January 31, 2003, over two years ago, Plaintiff  filed its original complaint in this Adversary Proceeding naming no fewer than 42 former Quality Stores officers and directors as defendants (the "Original Complaint").  On April 18, 2003, Lamm and Dresdale, along with the other defendants, moved to dismiss the Original Complaint.  After oral argument on October 22, 2003, while the Court did not formally grant the Defendants' dismissal motions, it nonetheless ordered the Plaintiff to amend the Original Complaint in an effort to address the numerous defects highlighted by the Defendants.

The Amended Complaint, now naming "only" 26 Defendants, represents the Plaintiff's second bite at the apple.  However, even when given a second chance, the Plaintiff has produced an amended pleading that suffers from many of the same deficiencies as the Original Complaint and repeats virtually the same unremarkable allegations as its predecessor.  Indeed, the most detailed new allegations in the Amended Complaint relate to the capital structure and financial condition of the Debtors before, during, and shortly after the May 7, 1999 merger of Quality

---

[2]   The officers and other directors of Quality Stores, besides Lamm and Dresdale, have also filed a separate motion to dismiss.  To the extent the arguments of that motion to dismiss are applicable to them, Lamm and Dresdale expressly incorporate herein by reference that motion to dismiss.

Stores into Central Tractor Farm & Country, Inc. ("Central Tractor").  A. Compl. ¶¶ 43-51. [3]

None of these add-on allegations, however, form the basis of any new claims or contribute

materially to the Plaintiff's old, inadequate claims.  In fact, as the Amended Complaint itself

alleges, Messrs. Dresdale and Lamm were not appointed to the Company's Board of Directors

until August 1999 (A. Compl. ¶¶ 17, 24), months *after* the May 1999 merger.   Accordingly, all

of the new allegations in the Amended Complaint regarding events that occurred before the

merger, during the merger, or between the closing of the merger and August 1999, on their face,

fail to state a claim against Dresdale and Lamm.  Even the Plaintiff could not reasonably expect

to hold Dresdale and Lamm responsible for alleged acts or omissions at the Company before

they joined the Board.  So far as those two Defendants are concerned, therefore, the Amended

Complaint adds absolutely nothing new.

## STATEMENT OF FACTS[4]

Both of the Debtors are Delaware corporations.  A. Compl. ¶¶ 11-12.  On November 1,

2001, Quality Stores answered an involuntary petition filed against it in this Court by creditors

under Chapter 11 of the United States Code (the "Bankruptcy Code"), and consented to the entry

of an order of relief.  *Id.* ¶ 8.  The same day, QSI filed a voluntary petition for relief under

---

[3] "A. Compl." refers to the Plaintiff's Amended Complaint.  "Frakie Affidavit" refers to the
Affidavit of James B. Frakie (Adv. Pro. Docket No. 14) submitted with the Motion to Dismiss
the Original Complaint filed by Messrs. Lamm and Dresdale on April 18, 2003.

[4] For purposes of the Motion to Dismiss only, Lamm and Dresdale accept as true the "facts" set
forth in the Amended Complaint.  *See, e.g., Blakely v. United States*, 276 F.3d 853, 863 (6th Cir.
2002); *In re Ellingsen MacClean Oil Co.*, 98 B.R. 284, 288 n.4 (Bankr. W.D. Mich. 1989)
(applying Fed. R. Civ. P. 12(b) to bankruptcy proceedings through Fed. R. Bankr. P. 7012(b)).
Neither the Court nor Lamm and Dresdale, however, need accept the "legal conclusions or
unwarranted factual inferences" put forth by the Plaintiff.  *Blakely*, 276 F.3d at 863.

Chapter 11 as an affiliated debtor of Quality Stores.  *Id.*  Pursuant to the First Amended Joint

Plan of Reorganization (the "Reorganization Plan") confirmed by this Court's Order dated May

3, 2002, the Debtors' assets were liquidated for distribution to creditors of the bankruptcy estate.

The Chief Litigation Officer, as appointed pursuant the Reorganization Plan, has brought this

adversary proceeding "for the benefit of the Debtors' estates and creditors."  *Id.* ¶ 9.

Prior to its bankruptcy, Quality Stores managed over three hundred stores in thirty-two

states, specializing in the agricultural, hardware, and related needs of rural consumers,

particularly part-time and full-time farmers and ranchers, hobby gardeners, skilled trades

persons, and do-it-yourself customers.  The named Defendants are identified as former officers

and/or directors of Quality Stores and/or QSI.  *Id.* ¶¶ 11-42.  The Plaintiff, however, provides

only scant details of the Defendants' service or conduct as directors and officers and do not even

distinguish between Quality Stores and QSI in identifying the directors and officers of the

respective entities.[5]

---

[5] Having been placed on notice in the Original Motion to Dismiss of the absence of a good faith, factual basis to allege that Mr. Dresdale is a former officer of the Debtors, the Plaintiff, incredibly, repeats the same erroneous allegations in the Amended Complaint.  *See* A. Compl. ¶ 42 (including Mr. Dresdale in the defined term "Officers").  As the Plaintiff is undoubtedly aware, Mr. Dresdale was a former director, and not an officer, of the Company.  The Plaintiff appears to acknowledge as much elsewhere in the Amended Complaint, *see* A. Compl. ¶ 17 (describing Dresdale only as a director of the Debtor), but nonetheless continues to include Mr. Dresdale in the Amended Complaint's numerous allegations against "Officers."  *See, e.g.,* A. Compl. ¶ 77, 79 and 81.  Prior public filings by Quality Stores with the U.S. Securities and Exchange Commission confirm that Mr. Dresdale served solely as an outside director, and was never elected to be an officer of Quality Stores.  *See, e.g.*, Annual Report of Quality Stores to the Securities and Exchange Commission (Form 10-K) for the Fiscal Year Ended February 3, 2001, *available at* www.sec.gov, attached as Exhibit 5 to the Frakie Affidavit.  Relevant pages of every annual Form 10-K filed by Quality Stores with the SEC over the time period covered by the Amended Complaint (1997-2001) are also attached, as Exhibits 6 through 8 to the Frakie Affidavit.  This Court may take judicial notice of such SEC filings pursuant to Fed. R. Evid.

Quality Stores was originally established in 1935.  On or about March 27, 1999, Central Tractor and CT Holdings, an entity that was acquired by J.W. Childs Equity Partners, L.P. ("J.W. Childs") in November 1996, entered into an agreement with Quality Stores under which Central Tractor bought Quality Stores.  *Id.* ¶ 43.  On or about May 7, 1999, Quality Stores merged into Central Tractor, with Central Tractor emerging as the surviving corporation and changing its name to "Quality Stores, Inc."  *Id.* ¶ 45.  Quality Stores became a wholly-owned subsidiary of QSI, an affiliate of J.W. Childs.  Messrs. Dresdale and Lamm were not appointed to the Company's board until August, 1999 (*Id.* ¶¶ 17, 24), months after the merger between Quality Stores and Central Tractor.

In the Amended Complaint, Plaintiff asserts in conclusory fashion that the 26 individual Defendants, many of whom had different positions and tenures with Quality Stores, all engaged in "a series of reckless, uninformed and grossly negligent decisions," which supposedly led to the "demise" of Quality Stores.  *Id.* ¶ 67.  The Plaintiff offers few facts about what supposedly happened during the nearly five-year period that the Amended Complaint puts at issue; instead, Plaintiff mainly relies upon sweeping statements and unsupported, unwarranted conclusions. The few discernable "facts" alleged in the Amended Complaint concerning the time period after Messrs. Dresdale and Lamm joined the Board are limited to the following allegations – all of which are asserted in sweeping fashion against an undifferentiated mass of defendants.

---

201(b) and (d).  *E.g.*, *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'  Fed.R.Evid. 201(b)(2).").  Because Plaintiff's counsel lacks a good faith basis to allege that Dresdale served as an officer, counsel must amend and correct the Amended Complaint in this regard, or otherwise run afoul of Fed. R. Bankr. P. 9011(b)(3).

- The Defendants allegedly adopted and followed a business model that did not permit Quality Stores to adequately service its debt.  A. Compl. ¶¶ 69-70.

- The Defendants supposedly integrated the computerized inventory management systems of Quality Stores and Central Tractor using a non-Y2K-compliant system that was not equipped to handle the increased sales volume following the merger, and using an "unsubstantiated" assumption that sales patterns at Central Tractor were identical to the patterns of similar goods sold by Quality Stores.  *Id.*  ¶¶ 71-82.

- The Defendants allegedly failed to become informed about, or were grossly negligent in allowing, the ordering of incorrect levels of inventory.  *Id.* ¶¶ 83-90.

- The Defendants allegedly adopted a "trade-dating-for-discounts" policy, whereby the Company agreed to repay credit on an accelerated basis in exchange for large volume discounts, while problems with the inventory management system and the purchase of excess inventory supposedly placed the Company in a position in which it was unable to pay down debt on an accelerated basis.  *Id.* ¶¶ 91-96.

- The Defendants instituted a bidding process among vendors, with the aim to lower merchandise costs, but with the alleged effect of alienating long-time vendors and introducing unknown and untested merchandise into the Company's retail chain.  *Id.* ¶¶ 97-99.

- The Defendants opened twenty-five new stores in 2000, but closed twenty-eight stores the same year, allegedly resulting in large inventory liquidation losses and other exit costs.  *Id.* ¶¶ 100-105.

- The Defendants supposedly spent too much on advertising and promotional pricing, without relying on any "data or feasibility studies" regarding the effectiveness of such advertising, thereby reducing profits.  *Id.* ¶¶ 106-108.

- The Defendants implemented an on-line store – based on customer surveys that Plaintiff claims were not tested by "any statistically proven methodology" – which ultimately proved unsuccessful.  *Id.* ¶¶ 109-113.

- The Defendants authorized payment of management fees to J.W. Childs and Fenway Partners for which Quality Stores allegedly did not receive any material benefit.  *Id.* ¶¶ 114-120.

It is based on these alleged "facts" that the Plaintiff has filed the present claims against Messrs. Lamm and Dresdale and now seeks to hold each of those former outside directors personally liable.

The Amended Complaint makes no colorable claim that Messrs. Lamm or Dresdale (or any other Defendant, for that matter) breached their duty of loyalty, acted in bad faith or somehow profited personally from the alleged business decisions with which the Plaintiff now finds fault.[6]

## **ARGUMENT**

The Amended Complaint must be dismissed because, taking all well-pled factual averments as true and drawing all reasonable inferences in their favor, the Plaintiff cannot prevail.  It is of course well-settled that, on a motion to dismiss, "[t]he Court must construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief. However, the Court need not accept as true legal conclusions or unwarranted factual inferences."

---

[6] The allegations in the Amended Complaint (A. Compl. ¶¶ 114-120) regarding the management agreement between Central Tractor and Fenway Partners, Inc. (the "Fenway Management Agreement") are insufficient as a matter of law to state a claim for the breach of the duty of loyalty.  To state such a claim, the Plaintiff must "plead *facts* demonstrating that a *majority* of a board that approved the transaction in dispute was interested and/or lacked independence."  *Orman v. Cullman,* 794 A.2d 5, 23 (Del. Ch. 2002) (internal citation omitted) (emphasis added).  The Amended Complaint, however, contains no allegations on such fundamental matters as: (i) when payments under the Fenway Management Agreement were authorized by the Board; (ii) how many directors were serving on the Board at the time(s) such authorization was provided; (iii) which directors were involved; and (iv) which directors, if any, voted for or against the continuation of such payments and which directors, if any, abstained from the vote.

*Blakely* v. *United States*, 276 F.3d 853, 863 (6th Cir. 2002) (citation omitted).  Under this standard, the Amended Complaint must be dismissed as to Lamm and Dresdale.  For starters, two of the six counts – Counts I and III – do not apply to Lamm and Dresdale at all.[7]  As for the remaining counts, Plaintiff has failed to allege anything other than "honest mistakes of judgment," which are protected under Delaware law by the business judgment rule.  *See* Section I, *infra*.  In addition to the Amended Complaint's failure to overcome the business judgment rule, Lamm and Dresdale are, as a matter of Delaware law, exculpated from personal liability for the duty-of-care claims alleged by the Plaintiff.  *See* Section II, *infra*.  Accordingly, the instant Motion should be granted and the Amended Complaint should be dismissed with prejudice as to Messrs. Lamm and Dresdale.

## I.    THE COMPLAINT FAILS TO OVERCOME THE PRESUMPTION UNDER DELAWARE LAW THAT LAMM AND DRESDALE ACTED IN GOOD FAITH AND IN THE BEST INTERESTS OF QUALITY STORES AND QSI

Even assuming *arguendo* that the skeletal allegations in the Amended Complaint encompass acts or omissions by Lamm and Dresdale — although the allegations of such acts or omissions are made only in a conclusory manner and continue to be lumped together with identical allegations against numerous other Defendants — the Plaintiff must still overcome the business judgment rule in order to survive a motion to dismiss.  This, the Plaintiff has failed to do.

---

[7] Count I seeks disallowance of proofs of claim.  A. Compl. ¶¶ 121-125.  Lamm and Dresdale have not submitted proofs of claim.  Count III alleges breach of fiduciary duty by the former officers of the Debtors.  *Id.*  ¶¶ 130-33.  Neither Lamm nor Dresdale was an officer of the Debtors.  *See* footnote 5, *supra*.

The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984), *rev'd on other grounds sub nom. Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000); *see also Citron* v. *Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del. 1989).[8]  The rule is "an extension of the fundamental principle 'that the business and affairs of a corporation are managed by and under the direction of its board.'"  *Citron,* 569 A.2d at 64 (quoting *Pogostin* v. *Rice*, 480 A.2d 619, 624 (Del. 1984)); *In re The Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 362 (Del. Ch. 1998) ("It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision, except 'in rare cases [where] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment.'" (quoting *Aronson*, 473 A.2d at 815).  The business judgment rule seeks to ensure that directors and officers will not be held personally liable for "honest mistakes of judgment." *Cheff* v. *Mathes*, 199 A.2d 548, 555 (Del. Ch. 1964); *Johnson* v. *Trueblood*, 629 F.2d 287, 294 (3d Cir. 1980).

---

[8]  Delaware law applies to this dispute.  As the U.S. District Court for the Eastern District of Michigan has explained, "[i]n matters of internal corporate governance, the law of the state of incorporation will ordinarily govern; while in matters external to the corporation, more general choice of law rules apply."  *Chrysler Corp.* v. *Ford Motor Corp.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997) (citing *First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983), and Restatement (Second) of Conflict of Laws §§ 301 and 302); *see also Rapistan Corp.* v. *Michaels*, 511 N.W.2d 918, 922 (Mich Ct. App. 1994) (per curiam) (applying Delaware law to claim that officers of Delaware corporation usurped corporate opportunity). Because Quality Stores and QSI were incorporated in Delaware at all relevant times, *see* A. Compl. ¶¶ 11-12, the law of Delaware controls here.

Even at the pleading stage, a complaint that fails to allege facts sufficient to overcome the business judgment rule must be dismissed. *Spiegel* v. *Buntrock*, 571 A.2d 767, 777-78 (Del. 1990); *Gagliardi*, 683 A.2d at 1052. To state a claim under Delaware law against a corporate fiduciary, the business judgment rule's presumption of non-liability must be overcome, and the burden of pleading facts sufficient to overcome the business judgment rule falls on the party challenging director conduct. *Cede & Co.* v. *Technicolor, Inc.*, 634 A.2d. 345, 361 (Del. 1993). In particular, a party challenging director conduct must allege facts sufficient to raise the specter of self-dealing, bad faith or gross negligence by that director. *Citron*, 569 A.2d at 64; *Krim* v. *ProNet, Inc.*, 744 A.2d 523, 527 (Del. Ch. 1999). "If the proponent fails to meet her burden of establishing facts rebutting the presumption, the business judgment rule, as a substantive rule of law, will attach to protect the directors and the decisions they make." *Citron,* 569 A.2d at 64 (citing *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985), and *Revlon* v. *McAndrews & Forbes Holding Co.*, 506 A.2d 173, 180 n.10 (Del. 1986)); *see also Cede & Co*., 634 A.2d at 361. Moreover, if a complaint fails to allege conduct that would, if proven, overcome the presumption of the business judgment rule, the complaint should be dismissed. *In re BHC Communications, Inc. S'holder Litig.*, 789 A.2d 1, 4 (Del. Ch. 2001) ("Of course, it is a bedrock principle of Delaware corporate law that, where a claim for breach of fiduciary duty fails to contain allegations of fact that, if true, would rebut the business judgment rule, that claim should ordinarily by dismissed under Rule 12(b)(6).").

The allegations of the Amended Complaint here fail to come within even "shouting distance" of overcoming the business judgment rule. *See Gagliardi*, 683 A.2d at 1053. The Amended Complaint alleges, with the benefit of hindsight, that the Defendants made a number of

decisions concerning (i) the adoption of a business plan; (ii) the integration of multiple computerized inventory management systems; (iii) the ordering of inventory; (iv) the adoption of a "trade-dating-for-discounts" policy; (v) the institution of a bidding process among vendors; (vi) the decision(s) to open twenty-five new stores in 2000 and close twenty-eight stores the same year; (vii) expenditures on advertising and promotional pricing; (viii) the implementation of an on-line store; and (ix) the payment of certain management fees.  A. Compl. ¶¶ 69-120.  Stripped of their invective, the Plaintiff's allegations amount to nothing more than an after-the-fact critique of certain operational decisions made in real time by the Company's managers as they tried to integrate Central Tractor into Quality Stores and make a go of the merged businesses. Whether or not those decisions ultimately proved successful is simply beside the point as far as the business judgment rule is concerned.  *See, e.g.*, *Brehm* v. *Eisner*, 746 A.2d 244, 260 (Del. 2000) ("It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision….").

Properly viewed, therefore, the Amended Complaint fails to state a cognizable claim for misconduct by any of the directors or officers of Quality Stores — let alone by outside directors Lamm and Dresdale.  At best, like a similar case summarily dispatched by the Delaware Chancery Court, the Amended Complaint in this case "alleges only . . . ordinary business decision[s] with . . . pejorative characterization[s] added."  *Gagliardi*, 683 A.2d at 1053.  Indeed, at the very most, the business decisions in this case, like those at issue in *Gagliardi*, "constitute either mistakes, poor judgment, or reflect hard choices facing a cash-pressed company."  *Id*. Here, as in *Gagliardi*, there is not a single "allegation of conflicting interest or suspect motivation," as required in order to overcome the business judgment rule and avoid dismissal.

*Id.*; *see also Ash* v. *McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *10 (Del. Ch. Sept. 15, 2000) ("[T]his Court has stated on several occasions that mere allegations that directors made a poor decision – absent some showing of self-dealing or suspect motivation – does not state a cause of action.").[9]

On the contrary, the allegations of the Amended Complaint simply concern matters that fall within the ordinary business judgment of corporate fiduciaries.  *See Gagliardi*, 683 A.2d at 1053.  The fact "that plaintiff regards the decision as unwise, foolish, or even stupid in the circumstances is not legally significant; indeed that others may look back on it and agree that it was stupid is legally unimportant."  *Id*.  The business judgment rule unquestionably protects such decisions.

Nor may the Plaintiff escape the application of the business judgment rule by suggesting that a series of corporate business decisions, none of which by itself is actionable, somehow in the aggregate eviscerates the protections afforded directors under Delaware law.[10]  Delaware's longstanding and deep-seated commitment to the business judgment rule does not rest on such a slippery slope.  Individual decisions made by directors that are entitled to the protection of the business judgment rule cannot somehow be stripped of that protection when viewed in the aggregate.  *See Cincinnati Bell Cellular Systems Co. v. Ameritech Mobile Phone Service of Cincinnati, Inc.,* Civ. A. No. 13389, 1996 WL 506906, *16 (Del. Ch. Sept. 3, 1996) ("the alleged

---

[9] Copies of all unreported decisions cited herein are included in the Appendix of Unreported Decisions filed with this Motion to Dismiss.

[10] Any attempt to aggregate isolated allegations of ordinary negligence into claims of gross negligence is, in any event, unavailing because gross negligence claims are barred by the exculpation provision in the Company's Certificate of Incorporation.  *See* Section II, *infra.*

-13-

negligence of separate persons, making independent business judgments, under distinct business conditions . . . cannot be woven together as though they are part of an intertwined fabric constituting a monolithic course of conduct.")  On the contrary, when directors make a series of decisions that ultimately result in an unfortunate outcome, the presumption and standard remain the same --  the decisions are protected by the business judgment rule so long as the directors were acting with a rational business purpose.  *See e.g., Andreae v. Andreae,* Civ. A. No. 11905, 1992 WL 43924, at \*7 (Del. Ch. March 5, 1992) (where directors "consistently made poor decisions" regarding the operation of the business the court held that such decisions were "precisely the types of operating decisions that the business judgment rule is meant to protect"). This policy is no less operative when directors make a series of rational, yet ultimately unprofitable decisions, and the important protections it affords directors would be eviscerated if, as to allegations of negligent conduct, creative plaintiff lawyers could end-run the business judgment rule by simply invoking a magical incantation that the whole is somehow greater than the inadequate parts.

Because the Amended Complaint "fails to contain allegations of fact that, if true, would rebut the business judgment rule" as applied to Lamm and Dresdale, the Amended Complaint should be dismissed in its entirety, and with prejudice.  *See In re BHC Communications,*  789 A.2d at 4.

II.    **THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE, PURSUANT TO SECTION 102(b)(7) OF THE DELAWARE CORPORATION LAWS, THE CLAIMS ASSERTED AGAINST LAMM AND DRESDALE ARE BARRED IN THEIR ENTIRETY BY THE EXCULPATION PROVISIONS IN THE DEBTORS' CERTIFICATES OF INCORPORATION**

In its opposition to the Defendants' motions to dismiss the Original Complaint, the Plaintiff argued that the corporate duty-of-care claims it asserted were not susceptible to dismissal pursuant to Delaware's exculpation statute, Del. Code. Ann. Tit. 8 § 102(b)(7) ("Section 102(b)(7)"), because such claims were asserted for the benefit of creditors. Since that time, however, the Delaware courts have spoken and have clearly established that Section 102(b)(7) applies to such claims, whether brought on behalf of shareholders *or* creditors. As covered below, that issue is no longer open to serious debate and is dispositive to this case. *See Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772 (Del. Ch. 2004) ("*Production Resources*")[11]; *Continuing Creditors' Committee of Star Telecommunications Inc. v. Edgecomb,* No. Civ. A. 03-278-KAJ, 2004 WL 2980736 (D. Del. Dec. 21, 2004) ("*Edgecomb*").

Section 102(b)(7) of the Delaware Corporation Laws provides that a certificate of incorporation may contain

> [a] provision eliminating or limiting the personal liability of a director *to the corporation* or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or knowing violations of law; (iii) under §174 of this title [regarding improper dividend payments or stock purchases/redemptions]; or (iv) for any transaction from which the director derived an improper personal benefit.

---

[11] A copy of *Production Resources* is attached hereto as Exhibit A.

Del. Code Ann. tit. 8, § 102(b)(7)(emphasis added).

As authorized by Delaware statute, both Quality Stores' and QSI's Certificates of Incorporation contain exculpatory provisions that fully absolve their respective directors of personal liability for breaches of the duty of care, such as those alleged here.[12]  Quality Stores' Certificate, for example, provides as follows:

> No director shall be personally liable *to the Corporation* or any stockholder for monetary damages for breach of fiduciary duty as a director, except to the extent that exculpation from liability is not permitted under the General Corporation Law of the State of Delaware as in effect when such breach occurred.  Neither the amendment nor repeal of the Article nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article shall reduce, eliminate or adversely affect the effect of this Article in respect of any matter occurring, or any cause of action, suit or claim that, but for this Article, would accrue or arise, prior to the effectiveness of such amendment, repeal or adoption.

Restated Certificate of Incorporation of Central Tractor Farm & Country, Inc., Article SEVENTH (emphasis added).[13]  The Certificate of Incorporation of QSI contains a nearly

---

[12]  Although the Plaintiff did not attach the Certificates of Incorporation to its Amended Complaint or otherwise mention them therein, the Court may properly consider the Certificates without converting the instant Motion to Dismiss into one for summary judgment.  Under Fed. R. Evid. 201(f), a court may take judicial notice of a corporation's charter at any point during litigation, including on a motion to dismiss.  *McCall* v. *Scott*, 239 F.3d 808, 814 n.3, 818 (6th Cir. 2000) (taking judicial notice of certificate of incorporation on a motion to dismiss); *Malpiede* v. *Townson*, 780 A.2d 1075, 1090 & n.47 (Del. 2001) (stating that a court may take judicial notice of a certificate of incorporation on a motion to dismiss).  In addition, the Court may consider the Certificates without converting the Motion to Dismiss into one for summary judgment, because they are documents that "simply fill in the details and contours of the plaintiff's complaint."  *Yeary* v. *Goodwill Indus.-Knoxville Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

[13]  When Central Tractor and Quality Stores merged on May 7, 1999, Central Tractor became the surviving corporation, and its Certificate of Incorporation remained in full force and effect after the merger, making Central Tractor's Certificate of Incorporation the governing instrument for Quality Stores.  *See* Certificate of Merger of Quality Stores, Inc. With and Into Central Tractor

identical provision.  *Accord* Restated Certificate of Incorporation of CT Holding, Inc., Article

NINTH.[14]

 The Amended Complaint asserts only corporate duty-of-care claims that are barred by the

exculpation provision in the Debtors' Certificates of Incorporation.  Whether styled as a claim

for "breach of fiduciary duty," "negligent inaction," or "waste," the averments in the Amended

Complaint – to the extent they even state a claim at all – are directed exclusively at the

Defendants' duty of care obligations.  *See, e.g.*, *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720,

731-32 (Del. Ch. 1999) ("If a complaint merely alleges that the directors were grossly negligent

in performing their duties . . . without some factual basis to suspect their motivations, any

subsequent finding of liability will, necessarily, depend on finding breaches of the duty of care,

not loyalty or good faith."); *see also Ash*, 2000 WL 1370341, at *8 (citing *Brehm* v. *Eisner*, 746

---

Farm & Country, Inc. Articles THIRD and FOURTH (filed as Exhibit 2 to the Frakie Affidavit).
The fact that Quality Stores was formerly known as Central Tractor is also acknowledged in
this Court's Order Confirming First Amended Joint Plan of Reorganization of the Debtors Under
Chapter 11 of the Bankruptcy Code (Docket No. 1283) (the "Order"), at 1 n.1, and in the
Reorganization Plan, attached as Exhibit I to the Order, at Article I.B., ¶ 27.  This Court may
take judicial notice of prior filings in this bankruptcy proceeding.  *In re Davis*, 278 B.R. 429, 430
(Bankr. W.D. Mich. 2002).

[14]  Certified copies of the Certificates of Incorporation for Central Tractor and CT Holdings, Inc.
and of Certificates evidencing, respectively, the Merger between Central Tractor and Quality
Stores, and the change of CT Holding's name to QSI, are filed herewith as exhibits to the Frakie
Affidavit; those documents are self-authenticating as certified copies of public records pursuant
to Fed. R. Evid. 902(4).  CT Holdings, Inc. changed its name to QSI Holdings, Inc. on May 7,
1999.  *See* Certificate of Amendment to Certificate of Incorporation of CT Holding, Inc., Article
THIRD (filed herewith as Exhibit 4 to the Frakie Affidavit ).  The fact that QSI Holdings, Inc.
was formerly known as CT Holdings, Inc., is also acknowledged in this Court's Order
Confirming First Amended Joint Plan of Reorganization of the Debtors Under Chapter 11 of the
Bankruptcy Code (Docket No. 1283) (the "Order"), at 1 n.1, and in the Reorganization Plan,
attached as Exhibit I to the Order, at Article I.B., ¶ 27.

A.2d 244 (Del. 2000)); *Bell Atlantic Corp.* v. *Bolger*, 2 F.3d 1304, 1316 (3d Cir. 1993) (citing *Unocal Corp.* v. *Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985)). The Amended Complaint alleges, in particular, that the Company experienced financial difficulties due to "a series of reckless, uninformed and grossly negligent decisions." A. Compl. ¶ 67. As covered earlier in this brief (at pp. 11- 12), the Plaintiff's allegations focus almost exclusively on the wisdom and utility of various operational decisions made by the Defendants, challenging only their discharge of the duty of care, and not the duty of loyalty.

The action must accordingly be dismissed as to Messrs. Lamm and Dresdale. In light of the exculpatory provision contained in Quality Stores' and QSI's Certificates of Incorporation, the Plaintiff simply cannot recover monetary damages from Lamm or Dresdale for alleged breaches of their duty of care. *See, e.g., In re Lukens*, 757 A.2d at 734 ("The function of the § 102(b)(7) Provision is to render duty of care claims not cognizable and to preclude plaintiffs from pressing claims of breach of fiduciary duty, absent the most basic factual showing (or reasonable basis to infer) that the directors' conduct was the product of bad faith, disloyalty or one of the other exceptions listed in the statute."); *Cooke* v. *Oolie,* Civil Action No. 11134, 1997 WL 367034, at *10 (Del. Ch. June 23, 1997) (holding that a claim of breach of the duty of care "clearly falls within [the] exculpatory provision [of section 102(b)(7)]"); *Green* v. *Phillips*, Civil Action No. 14436, 1996 WL 342093, at *7 (Del. Ch. June 19, 1996) (stating that money damages for breaching the duty of care are "barred as a matter of law" by section 102(b)(7)). That conclusion holds regardless of whether Plaintiff -- as it repeatedly attempts to do throughout the Amended Complaint – styles its claims as "gross negligence," since such claims themselves sound in duty-of-care and are barred by the exculpation provision. *Malpiede* v. *Townson*, 780

A.2d 1075, 1094-95 (Del. 2001) (stating that "even if the plaintiffs had stated a claim for gross negligence, such a well-pleaded claim is unavailing because defendants have brought forth the Section 102(b)(7) charter provision that bars such claims"); *accord Edgecomb,* 2004 WL 2980736, at *13 ("Similar to a claim of breach of the duty of care, an exculpatory provision also protects directors from a claim of gross negligence").

Where Section 102(b)(7) and an enabling charter provision protect directors from personal liability, actions asserting duty of care violations must be dismissed for failure to state a claim. *Malpiede*, 780 A.2d at 1093. Indeed, as the Delaware Chancery Court has observed:

> The effect of the exculpatory charter provision is to guarantee that the defendant directors do not suffer discovery or a trial simply because the plaintiffs have stated a non-cognizable damages claim for a breach of the duty of care. To give the exculpatory charter provision any less substantial effect would be to strip away a large measure of the protection the [Delaware] General Assembly has accorded directors through its enactment of [section 102(b)(7)].

*McMillan* v. *Intercargo Corp.*, 768 A.2d 492, 501 (Del. Ch. 2000).

In an attempt to evade the application of Section 102(b)(7) and the overwhelming body of Delaware jurisprudence that mandates dismissal of their claims, the Plaintiff argued in its opposition to the Defendants' original motion to dismiss that the Plaintiffs' admittedly corporate claims are somehow not susceptible to exculpation because such claims are asserted on behalf of the Debtors' creditors rather than its shareholders. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint (Adv. Pro. Docket No. 24) at 24-25. However, that argument, when first made by the Plaintiff, ignored the plain reading of the statute -- which expressly authorizes the exculpation of directors from liability *to the corporation* regardless of whether such corporate claims are asserted for the benefit of the corporation's

shareholders *or* its creditors.  Del. Code Ann. tit. 8, § 102(b)(7) (authorizing charter provisions that "eliminat[e] . . . the personal liability of a director *to the corporation or* its stockholders") (emphasis added).  Now moreover, Plaintiff's argument flies directly in the face of intervening Delaware case law, which (unsurprisingly) applies Section 102(b)(7) in the insolvency context according to its plain terms and which (unmistakenly) disposes of this case once and for all.  As the Delaware Court of Chancery recently held in *Production Resources*, "although Section 102(b)(7) itself does not mention creditors specifically, its plain terms apply to all claims belonging to the corporation itself, regardless of whether those claims are asserted derivatively by stockholders or by creditors."  863 A.2d at 793 (citation omitted).

As *Production Resources* now confirms, to deny former outside directors Lamm and Dresdale exculpation from the claims asserted in the Amended Complaint would undermine and eviscerate the very reason behind Section 102(b)(7).  The purpose of the statute is to "encourage directors to undertake risky, but potentially value-maximizing business strategies, so long as they do so in good faith."  *Id.* at 777.  To deprive directors of protection from claims asserted in the name of the corporation for the benefit of creditors "guts this purpose by denying directors the protection of §102(b)(7) when they arguably need it most".  *Id.*  Directors most need the protection of Section 102(b)(7) where "despite the directors' good intentions, the business plan of the firm did not generate financial success and the firm has become insolvent."  *Id.*  In such situations -- as in this case -- where claims are asserted in the name of the corporation for the benefit of creditors, the protection of Section 102(b)(7):

> is most valuable to directors because there is the real danger that a
> fact-finder, in view of hindsight bias and its knowledge of the fact
> that the directors' business strategy did not pan out, will conclude that

> the directors have acted with less than due care, even if they did not.
> If the mere fact that creditors have standing to pursue an insolvent
> corporation's claim against the directors or that the corporation's claim
> has been assigned as an asset to creditors somehow transforms the claim
> into one not belonging to the corporation, § 102(b)(7) protection might
> be withdrawn simply because a business strategy failed, hollowing
> § 102(b)(7) of much of its intended utility.

*Id.* at 794.

Guided by *Production Resources,* a second Delaware Court -- this time the federal district court -- confirmed that "exculpation clauses do indeed apply to prevent creditors as well as shareholders from bringing duty of care claims." *Edgecomb,* 2004 WL 2980736, at *11 (citing *Production Resources,* 863 A.2d at 793). In that case, in the fallout of a corporate debtor's bankruptcy filing, the creditors' committee asserted duty of care claims against the debtor's former directors and officers on behalf of the creditors' liquidating trust that had been assigned the debtor's causes of action. The Court in *Edgecomb* dismissed the plaintiff's duty of care claims on Section 102(b)(7) grounds, holding that "§ 102(b)(7) applies to all actions for which the Plaintiff alleges duty of care violations." *Edgecomb,* 2004 WL 2980736, at *12.

Both *Production Resources* and *Edgecomb* confirm what is immediately evident from the plain language and legislative purpose of Section 102(b)(7): Corporate duty-of-care claims of the type asserted in the Amended Complaint for the benefit of creditors fall squarely within the terms of Section 102(b)(7) and are therefore exculpated in their entirety. Those recent Delaware court decisions also confirm the reasoning adopted by prior, non-Delaware courts applying Delaware law – and which Defendants cited as support for their original motion to dismiss on Section 102(b)(7) grounds. *See Brandt v. Hicks, Muse & Co. (In re Healthco Int'l Inc.)*, 208 B.R. 288, 300 (Bankr. D. Mass. 1997) (hereinafter "*Healthco*") (*cited with approval by*

*Production Resources,* 863 A.2d at 793 n.65); *Official Comm. of Unsecured Creditors of Color*

*Tile, Inc.* v. *Investcorp, S.A.*, 137 F.Supp.2d 502, 515 (S.D.N.Y. 2001) (hereinafter "*Color*

*Tile*").[15]  As the court in *Healthco* explained, while the breach of fiduciary duty claims were

brought in that action for the economic benefit of the creditors of the corporation, the claims

were nonetheless ones that

> belonged to Healthco, not its creditors.  The Trustee contends the defendants
> breached their fiduciary duties *owed to Healthco*. . . .  The Trustee can bring any
> suit Healthco could have brought, including suits against directors and controlling
> shareholders for breach of fiduciary duty. In complaining that the directors
> authorized a transaction which unduly weakened Healthco, the Trustee is not
> asserting the claim of creditors.  He alleges Healthco was the victim of poor
> management causing damage to the corporation which necessarily resulted in
> damage to its creditors by diminishing the value of its assets and increasing its
> liabilities.

*Id.* (emphasis in original) (citations and footnote omitted).  The court in *Healthco* explicitly held

that, where such claims allege nothing more than breaches of the directors' duty of care, the

claims are barred by the corporation's exculpatory charter provision and Delaware's Section

102(b)(7).  *Healthco*, 208 B.R. 288, 308 ("[Healthco] amended its certificate of incorporation to

---

[15] Likewise, the Delaware courts in *Production Resources* and *Edgecomb* rejected the very cases
upon which Plaintiff relied in opposing the Defendants' original motion to dismiss on Section
102(b)(7) grounds; namely *Pereira v. Cogan,* No. 00 CIV 619 (RWS), 2001 WL 243537
(S.D.N.Y. March 8, 2001) *("Pereira")* and *Steinberg v. Kendig (In re Ben Franklin Retail
Stores, Inc.),* 225 B.R. 646, 652 (Bankr. N.D. Ill. 1998) *rev'd on other grounds, In re Ben
Franklin Retail Stores, Inc.,* No. 97C7934, 2000 WL 28266, at *8 (N.D. Ill. 2000).  Specifically
criticizing *Pereira*, the Delaware Court of Chancery rejected the notion that creditors asserting
corporate duty-of-care claims are not bound by exculpatory charter provisions, stating that "[t]he
argument that § 102(b)(7) clauses should not bind third parties lacks force because the clauses
only restrict third parties to the extent that they seek to enforce rights on behalf of the
corporation itself." *Production Resources*, 863 A.2d at 794 & n.68; *accord Edgecomb,* 2004 WL
2980736 at *11.

add the permissible charter provision.  The defendant directors are therefore immune from liability for breach of their duty of care."); *accord Color Tile*, 137 F. Supp. 2d at 515.

The Amended Complaint should, accordingly, be dismissed as to Lamm and Dresdale.

## <u>CONCLUSION</u>

For the foregoing reasons, Lamm and Dresdale respectfully request that their Motion to Dismiss the Amended Complaint be granted and that the Court dismiss the Amended Complaint with prejudice, as to them.

Dated:  February 14, 2005                      Respectfully submitted,

                                                                RICHARD C. DRESDALE
                                                                PETER LAMM

                                                                By their attorneys:

                                                                ___*James B. Frakie /s/*_____
                                                                James B. Frakie (P25439)
                                                                Tolley VandenBosch Korolewicz & Brengle, P.C.
                                                                1700 East Beltline, N.E.
                                                                Suite 200
                                                                Grand Rapids, Michigan 49525-7044
                                                                (616) 447-1800

*Of Counsel*

Randall W. Bodner (BBO #549160)
Peter L. Welsh (BBO #643261)
Gregory O. Kaden (BBO #643849)
Ropes & Gray LLP
One International Place
Boston, MA  02110-2624
(617) 951-7000